969 F.2d 714
 Elmer CARR, Plaintiff/Appellee,
v.
Joseph AUBUCHON, Norma J. Schroeder, H.B. Miller, Defendants,
Bill D. Miller, Defendant/Appellant,
Gary F. Toelke, Defendant,
Elmer Maschmann, Defendant/Appellant.
Elmer CARR, Plaintiff/Appellee,
v.
Joseph AUBUCHON, Defendant/Appellant,
Norma J. Schroeder, Defendant,
H.B. Miller, Defendant/Appellant,
Bill D. Miller, Gary F. Toelke, Elmer Maschmann, Defendants.
 Nos. 91-3612, 91-3618.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 7, 1992.
Decided July 15, 1992.
 
 Michael E. Pritchett, Jefferson City, Mo., argued, for appellants Schroeder, Maschmann, and Bill D. Miller.
 Joy R. Urbom, Evans & Dixon, St. Louis, Mo., argued, for H.B. Miller and Aubuchon.
 Robert J. Krehbiel and Adrian P. Sulser, Evans & Dixon, St. Louis, Mo., on the brief, for appellant Aubuchon.
 Sherri C. Strand, St. Louis, Mo., argued, for plaintiff/appellee.
 Before McMILLIAN, JOHN R. GIBSON, and BEAM, Circuit Judges.
 BEAM, Circuit Judge.
 
 
 1
 Elmer Carr filed this lawsuit, pursuant to 42 U.S.C. § 1983, claiming that Joseph Aubuchon, Bill D. Miller, and Elmer Maschmann violated his constitutional rights during criminal proceedings. Aubuchon, Miller, and Maschmann appeal from the district court's decision rejecting their claim of absolute or qualified immunity. We hold that the statute of limitations has expired, and we remand to the district court for dismissal.
 
 I. BACKGROUND
 
 2
 In January 1976, Carr and Peter Bauer were arrested in Franklin County, Missouri, and charged with assaulting Maurice Mense. Mense was hospitalized for his injuries, but his "condition deteriorated and he died of a pulmonary embolism" a few weeks after the assault. State v. Carr, 610 S.W.2d 296, 298 (Mo.App.1980) (opinion on direct appeal). Carr and Bauer were then charged with the murder of Mense in the second degree. The charges against Carr were soon dismissed, however, when, following a preliminary hearing, a Missouri judge determined that Bauer was the only person for whom probable cause existed. Bauer was eventually convicted of manslaughter and sentenced to two years' probation.
 
 
 3
 In February 1977, shortly after Bauer was convicted, Joseph Aubuchon, then a prosecutor for Franklin County, filed an affidavit again charging Carr with the second-degree murder of Mense. Following a change of venue to St. Charles County, Carr was convicted in a jury trial in 1978. He was sentenced to fifteen years in prison. In 1980, following the affirmance of his conviction on appeal, Carr fled from Missouri before he could be brought into custody. Carr remained a fugitive until early 1987, when he was apprehended in Georgia. He has been an inmate in the Missouri prison system since that time.
 
 
 4
 In July 1990, Carr filed this lawsuit, pro se. He alleges that in 1977 Aubuchon deprived him of his constitutional rights and conspired with others, including Bill D. Miller and Elmer Maschmann--current and former circuit court clerks, respectively, for Franklin County--to deprive him of his constitutional rights during the criminal proceedings against him.[1] More specifically, Carr alleges that "Aubuchon caused him to be arrested for second[-]degree murder without probable cause and then proceeded to conspire with the other defendants to create a spurious paper record and then to conceal evidence at his trial." Carr v. Aubuchon, No. 90-1428C(3), Order and Memorandum at 5 (E.D.Mo. Nov. 21, 1991). Carr alleges that Maschmann "created phony bail bonds to conceal the fact that [he, Carr,] had never been arrested for second[-]degree murder," that Maschmann "allowed false court filings to create the appearance that [he] had been arrested, charged, arraigned and bonded on the second[-]degree murder charge when he had not," and that "Maschmann also participated in creating the appearance that [he] was charged with threatening a state witness." Id. at 3. Finally, Carr alleges that "[w]hen Miller replaced Maschmann[, Miller] continued the conspiracy by refusing [his] request for information and files and by concealing records that [he] could have used to discover the violations of his rights." Id.
 
 
 5
 In district court, Aubuchon and Maschmann and Miller filed motions to dismiss and motions for summary judgment. Each defendant claimed, among other points, that the five-year statute of limitations for Carr's claims had passed and that they were entitled to some form of immunity, either absolute or qualified. The district court denied their motions. The district court concluded that the statute of limitations had not run because of the "continuing nature of [the] conspiracy" and that the statute of limitations was tolled because of (1) "the allegations of concealment" (Mo.Rev.Stat. § 516.280) and (2) the fact that Carr--even though he was a fugitive from justice--was " 'in execution under a sentence of a criminal court.' " Id. at 4 (quoting Mo.Rev.Stat. § 516.170). The district court also concluded (without any elaboration) that "material issues of fact remain for a jury to decide on the question of whether the defendants acted in good faith and are thus entitled to qualified immunity." Id. at 8. Aubuchon and Maschmann and Miller now appeal from the district court's decision. See Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985) (a district court's denial of immunity, "to the extent that it turns on an issue of law," is an appealable final decision under the collateral order doctrine).
 
 II. DISCUSSION
 
 6
 Although this case comes before us on appeal from the district court's order denying immunity, we have discretion to exercise jurisdiction over the statute of limitations issue as well. The question of whether the statute of limitations has run is purely a legal issue, it was briefed and argued below, and it is easily resolved. Thus, in the interest of judicial economy, it is on that basis which we dispose of this case.[2]
 
 
 7
 Because no federal statute of limitations governs actions under 42 U.S.C. § 1983, the timeliness of such a suit is to be determined by the "state statute of limitations and the coordinate tolling rules." Board of Regents, University of New York v. Tomanio, 446 U.S. 478, 484, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980); see also Hardin v. Straub, 490 U.S. 536, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989) (the tolling rules federal courts are required to apply include those which suspend limitations periods for prisoners and other persons with legal disabilities). The district court was correct to rely on Missouri law to analyze Carr's claim, but it misinterpreted Missouri's case law and tolling statutes on the question of whether the statute of limitations had run.
 
 
 8
 As explained above, the district court gave three reasons why Carr's suit did not violate Missouri's five-year statute of limitations. First, the district court stated that the statute of limitations had not begun to run because of the "continuing nature of this conspiracy and the allegations of concealment." Order and Memorandum at 4. According to our reading of the record, the conspiratorial acts which Carr complains of--for example, that the appellants forged court documents to falsely show that Carr waived a preliminary hearing and that Carr was arrested--all allegedly occurred in 1977, and Carr's trial took place in 1978. Under Missouri law, the statute of limitations in a civil "conspiracy action begins to run upon the occurrence of the last overt act charged resulting in damage to the plaintiff." Kansas City v. W.R. Grace & Co., 778 S.W.2d 264, 273 (Mo.App.1989). Nothing in the nature of the conspiracy which Carr alleges caused the statute of limitations to begin to run any later than 1978.
 
 
 9
 Second, the district court held that under Missouri Revised Statutes section 516.280, Carr's statute of limitations was tolled because of his "allegations of concealment." Section 516.280 states that "[i]f any person, by absconding or concealing himself, or by any other improper act, prevent the commencement of an action, such action may be commenced within the time herein limited, after the commencement of such action shall have ceased to be so prevented." After examining the record and considering the Missouri cases interpreting section 516.280, we can find no allegation of "concealment" by the appellants sufficient to toll the statute of limitations. Carr alleges that the appellants forged certain court documents and evidence, but these actions did not prevent him from "discovering" these acts. In fact, it appears from Carr's own account, that he "discovered" his evidence for this lawsuit quite easily once, after being placed in prison, he began requesting copies of documents from state offices. Nothing alleged by Carr indicates that the appellants prevented Carr from discovering his cause of action.
 
 
 10
 Third, the district court held that the statute of limitations was tolled pursuant to Missouri Revised Statutes section 516.170. Section 516.170 provides, in part, that "[i]f any person entitled to bring an action" is "imprisoned on a criminal charge, or in execution under a sentence of a criminal court for a less term than for his natural life, such persons shall be at liberty to bring such actions ... after such disability is removed."[3] The district court decided that although Carr was a fugitive, he was "in execution under a sentence of a criminal court" once the Missouri Court of Appeals affirmed his sentence. We believe this is an incorrect interpretation of Missouri law. The statute of limitations was not tolled while Carr was a fugitive.
 
 
 11
 It does not matter, according to the Missouri Supreme Court, whether a state or federal "court imposes the sentence or where it is served"--section 516.170 still applies. Jepson v. Stubbs, 555 S.W.2d 307, 310 (Mo.1977) (en banc) (section 516.170 does not operate to toll the statute of limitations when the plaintiff is on parole). It seems to us, however, that it does matter whether the sentence is actually being served. If a sentence is not being served, neither the plain language of section 516.170 nor the purpose of the statute applies.
 
 
 12
 Section 516.170, as indicated, states that the statute of limitations is tolled if a plaintiff is "in execution under a sentence of a criminal court." There is general agreement in dictionaries that a sentence is "executed" when it is carried out or put into effect. See, e.g., Black's Law Dictionary 568 (6th ed. 1990); Random House Dictionary 676-77 (2d ed. 1987); Bryan A. Garner, A Dictionary of Modern Legal Usage 229-30 (1987). While Carr was a fugitive, his sentence was not being carried out. Furthermore, the meaning and purpose of this tolling statute was stated by the Missouri Supreme Court as early as 1921: "The reason for the enactment of the statute [now section 516.170] is obvious. One actually imprisoned or physically restrained is deprived of freedom of action. He cannot look after his affairs. It would be a denial of the equal protection of the law if one so restrained were not exempted from the operation of the general statute of limitations." Hyde v. Nelson, 287 Mo. 130, 229 S.W. 200, 201 (1921) (emphasis added). Carr was not "actually" imprisoned or physically restrained. Therefore, the purpose of section 516.170 does not apply.[4]
 
 III. CONCLUSION
 
 13
 For the reasons stated, we reverse the decision of the district court on the basis that the statute of limitations for Carr's section 1983 claim has expired. The five-year statute of limitations on Carr's claim began to run in 1978 and nothing between that date and the filing of this lawsuit caused the statute to be tolled. Thus, we remand for the district court to dismiss.
 
 
 
 [1]
 Originally, Carr included three other people as defendants--H.B. Miller, the former sheriff of Franklin County, Gary F. Toelke, and Norma Schroeder--but they are no longer parties to this lawsuit. Miller died while his summary judgment motion was pending before the district court; Toelke was dismissed as a defendant by the district court; and, Schroeder was removed, apparently, as a result of Carr's failure to name her as a defendant in his amended complaint
 
 
 [2]
 Carr's appeal could quite possibly be resolved on several different bases. We question, for example, after looking at the facts alleged by Carr, whether there are indeed any disputed material issues of fact. To resolve our doubts, we could remand to the district court for a more thorough explanation of exactly what facts, in the voluminous record of this case, are in dispute. More fundamentally, however, we question whether Carr has raised a constitutional claim, as is required if he is to survive an immunity challenge. See Siegert v. Gilley, --- U.S. ----, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) (a court must first determine whether "the plaintiff has asserted a violation of a constitutional right at all"). Finally, we question the propriety of this section 1983 lawsuit when Carr has not yet exhausted his post-conviction remedies. See Offet v. Solem, 823 F.2d 1256 (8th Cir.1987). Carr's habeas lawsuit, in fact, is now pending before this court (Carr v. Higgins, No. 91-3758)
 
 
 [3]
 In 1990, section 516.170 was amended and most of this language was deleted from the statute. The district court was right to analyze Carr's claim under the earlier statute; that language was in effect when Carr's claim began accruing
 
 
 [4]
 Carr, moreover, as a matter of equity, should not receive the benefit of the tolling statute while he is a fugitive from justice. This is analogous to the rule which holds "that a criminal defendant who by his escape removes himself from the court's power and process and remains at large during the pendency of his appeal forfeits his right to appeal." Wayne v. Wyrick, 646 F.2d 1268, 1270 (8th Cir.1981)