# United States Bankruptcy Appellate Panel
**FOR THE EIGHTH CIRCUIT**

_____

No. 01-6061WM

_____

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Gaela A. Crawford, | * | |
| f/k/a Hedrick | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Eastern States Life Insurance | * | |
| Company, | * | |
| | * | |
| Plaintiff-Appellant, | * | Appeal from the United States |
| | * | Bankruptcy Court for the Western |
| v. | * | District of Missouri |
| | * | |
| Bruce E. Strauss, Trustee, and | * | |
| Gaela A. Crawford, f/k/a Hedrick | * | |
| | * | |
| Defendants-Appellees, | * | |
| | * | |

_____

Submitted: January 25, 2002
Filed: March 22, 2002

_____

Before KRESSEL, SCHERMER and DREHER, Bankruptcy Judges.

_____

KRESSEL, Bankruptcy Judge.

Eastern States brought an adversary proceeding against the defendants asserting that it was entitled to a portion of the annuity payments which the defendants were receiving pursuant to a personal injury settlement obtained by the debtor prepetition.[1] The complaint alleged that the debtor had assigned a portion of those payments to Eastern States and that Eastern States held a properly perfected security interest in those payments. Eastern States filed a motion for summary judgment and subsequently, a trial was held. Following the trial and a review of the summary judgment motion, the bankruptcy court entered judgment in favor of the defendants.[2] The bankruptcy court based its decision upon its finding that Eastern States did not hold a properly perfected security interest. The court therefore concluded that Eastern States' interest was subordinate to the trustee's interest pursuant to 11 U.S.C. § 544. We affirm to the extent that the bankruptcy court granted judgment in favor of the trustee as to the bankruptcy estate's 25 percent interest in the annuity payments. To the extent that the judgment ruled that Eastern States' interest is subordinate to the debtor's, or otherwise avoided Eastern States' interest in favor of the debtor, we reverse and remand.

## BACKGROUND

The debtor brought a personal injury lawsuit against several defendants which was settled pursuant to a Release and Settlement Agreement on May 25, 1995. Under the terms of that agreement, the tort defendants assigned to Metropolitan Life

---

[1] As explained below, in accordance with the terms of a previous court order, the trustee was entitled to 25 percent of the payments and the remainder was exempt and going to the debtor.

[2] Although the judgment did not mention the summary judgment motion, in the accompanying Memorandum Opinion, the court stated that it would "enter an Order denying Eastern States [sic] motion for summary judgment and a judgment in favor of the Trustee as to this adversary proceeding." We construe the court's judgment as denying Eastern States' motion for summary judgment and entering judgment for the defendants based upon the merits.

Insurance & Annuity Company, the defendants' obligation to pay the debtor $3,413.00 per month for a 30 year term commencing on July 1, 1995.[3] The amount increases by 3 percent on July 1st of every year. The agreement has a non-assignment clause.[4]

On December 29, 1997, the debtor entered into an agreement with Colonial Financial Services. The bankruptcy court found that under the terms of this agreement, which was not made part of the record on appeal, the debtor unconditionally and irrevocably assigned to Colonial her right to receive a portion of the Metropolitan annuity payment in exchange for a lump sum of $128,000.00. The court found that the agreement provided that Colonial was to receive $2,000.00 per month from each Metropolitan payment for a 10 year period beginning on February 1, 1998, and ending on January 1, 2008. Colonial would also receive a 3 percent increase in payment each July 1st. The debtor testified that Metropolitan sent monthly checks made payable to the Gaela Hedrick Irrevocable Trust to Colonial's address. Colonial would then stamp the check with the debtor's signature, cash the check and keep its payment and send the balance to the debtor.

On January 19, 1998, Colonial assigned its rights to Eastern States. On January 30, 1998, Colonial filed a UCC-1 financing statement with the Missouri Secretary of State, attempting to perfect a security interest in the debtor's rights and interests in the Metropolitan annuity policy. This financing statement was not filed in the debtor's then county of residence, Taney County, Missouri.

---

[3] In addition to Metropolitan, the structured settlement agreement between the debtor and tort defendants provided for annuity payments to the debtor from additional companies. Only the Metropolitan payments are at issue in this case.

[4] The clause provided that the debtor and her beneficiaries "shall not have the right to . . . [s]ell, mortgage, encumber or anticipate the periodic payments or any part thereof, by assignment or otherwise." Appellee's App. at 13.

The debtor filed a Chapter 11 bankruptcy petition in California on April 5, 1999. This case was converted to Chapter 7 on July 20, 1999, and was subsequently transferred to Missouri. The debtor attempted to exempt the full amount of all the annuity payments she was receiving[5] and the Chapter 7 trustee objected. The trustee and the debtor agreed that 25 percent of the total monthly annuity payments she was receiving from all sources, not just Metropolitan, belonged to the bankruptcy estate, and the remaining 75 percent was exempt and did not belong to the estate. An order was entered accordingly. In his brief on appeal, the trustee stated that the debtor was receiving two monthly annuity checks. He explained that he passed the larger of the two checks onto the debtor, and negotiated the smaller check, the Metropolitan check, taking the estate's total 25 percent portion from that check and relaying the remaining funds to the debtor.[6]

Following the conversion of debtor's bankruptcy case to Chapter 7, Metropolitan, in September 1999, ceased sending the payments to the Colonial or Eastern States address, and began sending them to the Chapter 7 trustee. Eastern States made a demand upon the trustee for its alleged portion of the Metropolitan payments. Eastern States then filed a complaint against the trustee and the debtor alleging that: Eastern States was the assignee of debtor's right to receive monthly annuity payments from Metropolitan; Eastern States held a properly perfected interest in those payments; Eastern States was a secured creditor of the estate in the amount of $250,000 as reflected by its Amended Proof of Claim; Eastern States was entitled to a portion of the Metropolitan payments received by the trustee from October 1,

---

[5] *See supra* note 3.

[6] Perhaps belatedly realizing the unnecessary situation the trustee placed himself in, he noted at oral argument that had he taken the estate's portion from the non-Metropolitan funds, he would not have been a party to this action. Indeed, Eastern States could have attempted to accomplish what it is seeking by attacking only the 75 percent interest the debtor is receiving, without including the trustee in this adversary proceeding.

1999 through February 1, 2001, in the sum of $36,570.80; and, Eastern States was entitled to "its" portion of future payments. Notably, Eastern States' complaint does not allege that it had any ownership interest in the payments as a result of having purchased an interest in the payments.

The trustee and the debtor both answered that the debtor's attempted assignment to Eastern States' predecessor-in-interest, Colonial, was invalid because of the anti-assignment clause in the structured settlement agreement. The trustee also offered the affirmative defense that Eastern States' security interest was not properly perfected and hence was subordinate to the trustee's 25 percent interest.

Eastern States filed a motion for summary judgment on June 4, 2001. Before any ruling on the motion, the court held a trial on the merits of the action on June 18, 2001. On July 26, 2001, the bankruptcy court issued judgment in favor of both defendants. In its accompanying Memorandum Opinion, the court found that Eastern States' failure to properly perfect its security interest was dispositive. The court therefore did not reach the issue of the effect of the non-assignment clause.

## DISCUSSION
*Standard of Review*

We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. *Blackwell v. Lurie (In re Popkin & Stern)*, 223 F.3d 764, 765 (8th Cir. 2000); *Wendover Fin. Servs. v. Hervey (In re Hervey)*, 252 B.R. 763, 765 (B.A.P. 8th Cir. 2000).

At trial, the parties presented conflicting evidence as to whether the transaction between the debtor and Colonial should be characterized as a sale or loan. The agreement, which we do not have, was apparently entitled "Purchase and Sale Agreement" and stated "This is Not a Loan." The debtor testified that she approached Colonial seeking a loan in order to consolidate her debts and she thought the

5

transaction was a loan despite the document's alleged language. There is other evidence supporting debtor's assertion that the assignment was for the purposes of creating a security interest to secure a loan, and not an absolute assignment.[7] For example, neither Colonial nor Eastern States ever took actual possession of the annuity payments. They acted as more of a conduit and the checks from Metropolitan were never made payable to them. Eastern States filed a claim declaring that it held a secured claim in the amount of $250,000. The claim did not indicate that Eastern States had any ownership interest in the payments.

However, the bankruptcy court did not make a finding on this issue finding it "irrelevant . . . because [the debtor] intended to grant Colonial a security interest in the stream of payments either way."[8] On appeal, the parties continue to argue this issue. Even if this issue were properly before us, which it is not, we would be unable to properly review the court's findings because the parties have failed to include the agreement in the record on appeal. *See Wendover*, 252 B.R. at 767 (noting that, as a reviewing court, we cannot determine whether a bankruptcy court committed clear error in its factual findings where the parties fail to provide the factual record). In any event, it is not necessary to our review to examine this issue.

---

[7] It is well-established law that courts will look beyond the words used to determine the true nature of a security transaction. *See Endico Potatoes, Inc., v. CIT Group/Factoring, Inc.,* 67 F.3d 1063, 1068-69 (2d Cir. 1995) (noting that, regardless of the labels used by the parties, courts will look to several factors to determine the substance of a transaction, including, recourse and which party bears the risk of non-performance); *Major's Furniture Mart, Inc., v. Castle Credit Corp.,* 602 F.2d 538, 543-46 (3d Cir. 1979) (stating that the "determination, as to whether a particular assignment constitutes a sale or a transfer of security, is left to the courts for decision"; and examining in detail the factors courts should consider); *United States v. Poling,* 73 F. Supp. 882, 893-94 (S.D. Ohio 1999); *In re Paul,* 83 B.R. 709, 713-14 (Bankr. D.N.D. 1988).

[8] App. at 63.

*Eastern's Claim Against the Trustee*

The bankruptcy court ruled that Eastern States did not hold a properly perfected security interest, and thus, Eastern States' interest was subordinate to the trustee's interest pursuant to 11 U.S.C. § 544.

"Property interests are created and defined by state law." *In re John Chezik Imports, Inc.,* 195 B.R. 417, 420 (Bankr. E.D. Mo. 1996) (quoting *Butner v. United States*, 440 U.S. 48, 55 (1979)). Article 9 of the Uniform Commercial Code, as adopted by Missouri, applies to any transaction, regardless of form, which is intended to create a security interest in personal property. *See* Mo. Stat. Ann. § 400.9-102 (1994); *George W. Ultch Lumber Co. v. Hall Plastering, Inc.,* 477 F. Supp. 1060, 1064 (W.D. Mo. 1979); *Bradley v. K & E Invs., Inc.,* 847 S.W.2d 915, 920 (Mo. Ct. App. 1993). It applies to security interests created by contract, including assignments. *George W. Ultch Lumber*, 477 F. Supp. at 1064; *see also Artoc Bank & Trust, Ltd., v. Apex Oil Co. (In re Apex Oil Co.)*, 975 F.2d 1365, 1369 (8th Cir. 1992) (stating, "[w]e see no meaningful difference between a security interest and an assignment for the purposes of security. In fact, they appear to be the same thing under Article 9."). As correctly noted by the bankruptcy court, under Missouri law in effect at the time in question, in order to properly perfect a security interest in a general intangible such as a contract right, Eastern States was required to file a financing statement in the proper place. *See* Mo. Stat. Ann. §§ 400.9-106, 9-302(1), 9-401(1)(c) (1994). Here, the proper place was in two locations: with the Missouri secretary of state and the recorder's office of the county in which the debtor resided, Taney County. *See* § 400.9-401(1). Without proper perfection, the unperfected security interest is subordinate to the rights of a person who becomes a lien creditor. *See* § 400.9-301(1)(b). A bankruptcy trustee has the rights and powers of a hypothetical judicial lien creditor, including the power to avoid the unperfected inferior interest. *See* 11 U.S.C. § 544(a)(1).

7

Eastern States complaint alleged that Eastern States held a properly perfected interest securing its right to receive a portion of the Metropolitan annuity payments which were allegedly assigned to it. Eastern States based its motion for summary judgment on this same premise. Following the trial, Eastern States submitted a trial brief in which it stated that: "Plaintiff has since determined that a financing statement was not filed with the Taney County recorder of deeds. Therefore, Plaintiff's security interest is not effective as to the portion of the annuity funds that this Court has previously adjudicated as not exempt."[9] Eastern States then went on to argue that the trustee's avoidance powers did not affect Eastern States' security interest in the debtor's exempt portion of the payments. Finally, the brief included the following statement:

> As the Plaintiff's security interest is not perfected against the Trustee, *Plaintiff concedes that judgment against [the trustee], to the extent of the Trustee's 25% share in the annuity funds, would not be appropriate*. For all these reasons, the *Plaintiff requests that this Court enter judgment against Gaela Hedrick* for its rightful share of the Metropolitan annuity payments that have been paid to date, and for a determination of Plaintiff's right to receive future payments from the annuity . . . .[10]

Therefore, Eastern States conceded that judgment against the trustee was not appropriate and further requested that the court enter judgment only against the debtor. Statements contained in a party's pleadings are binding on that party, and are considered judicial admissions, unless the statements are withdrawn or amended. *See Knudsen v. United States,* 254 F.3d 747, 752 (8th Cir. 2001); *Mo. Hous. Dev. Comm'n v. Brice,* 919 F.2d 1306, 1314 (8th Cir. 1990). "[J]udicial efficiency

---

[9] App. at 42-43. Eastern States and the defendants also submitted a written stipulation regarding the lack of a financing statement on file with the proper county.

[10] App. at 44 (emphasis added).

8

demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible." *Knudsen*, 254 F.3d at 752 (quoting *Soo Line R. Co. v. St. Louis Southwestern Ry. Co.,* 125 F.3d 481, 483 (7th Cir. 1997)).

Thus, where the debtors' attorney stated unambiguously in a motion to alter or amend judgment that there was no tenancy at will, and a prior determination by the court that there was a tenancy at will was critical to the earlier judgment in favor of the debtors, the court held that this was a judicial admission by the debtors' attorney. Based upon this admission, the court found that it had no alternative but to strike the prior findings and vacate its prior judgment in favor of the debtors in its entirety. *Brewer v. Tip Top Credit Union (In the Matter of Brewer),* 65 B.R. 75 (Bankr. W.D. Mo. 1986). Subsequently, the debtors hired new counsel and brought a motion for reconsideration, but this motion was denied. *See Brewer v. Tip Top Credit Union (In the Matter of Brewer),*76 B.R. 707 (Bankr. W.D. Mo. 1987); *see also Postscript Enters. v. City of Bridgeton*, 905 F.2d 223, 227-28 (8th Cir. 1990) (finding statements made by counsel in a brief and orally, as to the effect of a permit ordinance, to be judicial admissions negating the need to consider due process arguments concerning the permit process); *Carson v. Pierce*, 726 F.2d 411 (8th Cir. 1984) (ruling, in a housing discrimination case, that counsel's statement at oral argument that the plaintiffs had voluntarily vacated their apartment was a judicial admission mooting their claim, notwithstanding that counsel subsequently tried to present evidence that the move was involuntary).

Here, in plaintiff's trial brief, counsel for Eastern States clearly and unambiguously  stated that: a financing statement was not filed with the proper county; its security interest was not perfected against the non-exempt portion of the annuity payments; and, judgment against the trustee was not proper. In addition, the brief then requests that the court enter judgment in favor of Eastern States only against the debtor. These statements by counsel for Eastern States are judicial

admissions. Eastern States has conceded that the judgment against the trustee, as to the estate's non-exempt 25 percent portion of the annuity payments, is not appropriate. The bankruptcy court did not err in granting judgment in favor of the trustee.

During oral argument, and in its reply brief, Eastern States made an attempt to argue that it acquired an absolute ownership interest in the Metropolitan payments through the assignment, and thus, its failure to perfect is somehow not relevant as to the trustee.[11] However, based upon Eastern States' judicial admission, this is not a door that Eastern States may reopen. Indeed, following its concession, and despite its belated attempts on appeal, Eastern States has focused its argument, including its opening brief, on the premise that nothing in the bankruptcy court's analysis of the perfection issue supports the court's judgment in favor of the debtor. Eastern States is right.

*Eastern's Claim Against the Debtor*

The entire basis of the bankruptcy court's decision, and the only analysis contained in its opinion accompanying the judgment, is the failure to perfect. However, Eastern States' failure to properly perfect its interest does not affect its position regarding the debtor's 75 percent interest in the payments. Further, the fact that a court previously ruled that this portion is exempt and does not belong to the

---

[11] To the extent that Eastern States is attempting to argue a position that is inconsistent with its prior concession regarding the effect of its failure to perfect, the doctrine of judicial estoppel may also apply. *See Hossaini v. W. Mo. Med. Ctr.*, 140 F.3d 1140, 1142-43 (8th Cir. 1998) (stating that this doctrine prohibits a party from taking a position inconsistent with an earlier position in the same or related litigation); *see also United States v. Transport Admin. Servs.*, 260 F.3d 909, 917-18 (8th Cir. 2001) (upholding the district court's application of the doctrine to prevent debtors from prosecuting a claim which they had previously failed to list on their bankruptcy schedule of assets).

bankruptcy estate does not mean that this interest cannot be subject to Eastern States' lien or interest.

First, the trustee's ability to subordinate and avoid Eastern States' security interest is only applicable as to the bankruptcy estate's 25 percent interest in the annuity payments. The perfection and filing requirements are for the benefit of third parties, not the debtor. *See* Mo. Stat. Ann. §§ 400.9-301 (1994); *Vintero Corp. v. Corp. Venezolana de Fomento (In the Matter of Vintero Corp.)*, 735 F.2d 740, 742 (2d Cir. 1984). The courts have universally limited the trustee's avoidance powers to situations in which there will be a benefit for the estate's creditors. If the action will only benefit the debtor, courts will not allow the avoidance power to be used. *See Official Comm. Of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237, 244 (3d Cir. 2000); *Harstad v. First Am. Bank (In re Harstad)*, 155 B.R. 500, 511 (Bankr. D. Minn. 1993), *aff'd,* No. BKY 4-90-869, CIV 3-93-512, 1994 WL 526013 (D. Minn. Jan.20, 1994), *aff'd*, 39 F.3d 898 (8th Cir. 1994). There was no showing in this case that would support a finding that avoiding Eastern States' interest in the exempt portion of the payments would benefit the estate.

Moreover, as between Eastern States and the debtor, Eastern States secured interest remains valid. *See* Mo. Stat. Ann. § 400.9-301; *Bremen Bank & Trust Co. of St. Louis v. Muskopf*, 817 S.W.2d 602, 608 (Mo. Ct. App. 1991); *see also Vintero*, 735 F.3d at 742 (maintaining that a security interest does need to be perfected in order to be valid against the debtor; perfection only allows enforcement of the interest against third parties). The debtor has never taken any steps to avoid Eastern States' interest. She merely asserted, as a defense, that the assignment to Eastern States was not valid because of the non-assignment clause contained in the structured settlement agreement. The bankruptcy court never reached the issue of the effect of the non-assignment clause.

11

Second, the bankruptcy court's prior order exempting 75 percent of the annuity payments did not avoid or otherwise negate Eastern States' interest. Property that is exempted under 11 U.S.C. § 522 remains liable for debts secured by a lien that has not been avoided under any of the applicable Bankruptcy Code provisions. *See* 11 U.S.C. § 522(c)(2); *Matter of Lassiter*, 104 B.R. 119, 121-22 (Bankr. S.D. Iowa 1989). As noted above, the debtor has never attempted to avoid Eastern States' lien, and the trustee's ability to subordinate and avoid the lien as to the estate's 25 percent interest in the annuity payments does not affect Eastern States' interest in the portion belonging to the debtor.

Because the record does not support judgment in favor of the debtor, the bankruptcy court erred in granting judgment for the debtor. We note, though, that the court did not reach the non-assignment clause issue, and there may be other unexamined issues concerning Eastern States' ability to prevail on its complaint as against the debtor. Therefore, we will remand this matter to the bankruptcy court.

CONCLUSION

The judgment of the bankruptcy court is affirmed to the extent that it granted judgment in favor of the trustee as to the bankruptcy estate's 25 percent interest in the annuity payments. To the extent that the court ruled that Eastern States' interest is subordinate to the debtor's, or otherwise avoided Eastern States' interest in favor of the debtor, we reverse and remand to the bankruptcy court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE
PANEL, EIGHTH CIRCUIT.

12